Case No. 24-1253, et al., East Tennessee Group Petitioner v. Federal Energy Regulatory Commission. Mr. Regula for the petitioner, Mr. Ediger for the respondent, Mr. Johnson for the interviewer. Good afternoon, Your Honors. May it please the Court, Ryan Regula from Selma-Wilmer here on behalf of Petitioner, East Tennessee Group. I'd like to reserve three minutes for rebuttal, please. Your Honors, this case involves an appeal of an order of the Federal Energy Regulatory Commission, which granted Interviewer Pipeline both, one, a certificate under Section 7c of the Natural Gas Act to construct an addition to the pipeline system known as a SAP project, and two, a predetermination that the pipeline could recover from its shippers the entire $390 million price tag of this project. Petitioner is not challenging the certificate for construction. Rather, we're challenging the FERC's grant of predetermination that the entirety of the $390 million cost of this project should be borne by the pipeline shippers. Petitioner has two arguments, one, due process, and two, arbitrary and capricious. We'll focus on due process first. But before you get to that, my understanding is, and correct me if I'm wrong, that a Section 4 proceeding is underway now. That is correct. And that in that proceeding, I think maybe you or at least others have argued about how these costs of this, these pipeline enhancements should be allocated, obviously consistent with your current view, that it should go to more recent customers. Is that correct? There is a Section 4 rate case going on currently. I am not involved in it, but my understanding is correct that there are an issue, and that issue is currently regarding allocation. I'm focusing on the predetermination that the predetermination itself should be sent to a Section 4 rate case to determine whether it should be the entire shippers, the new shippers, or the current shippers. Shippers that are currently on the line. Could the Section 4 proceeding that's underway make that same decision that could it be decided there by the commission that the only fair way, based on all the evidence, whatever it is comes in there, I'm not saying they would, but it could they decide that, oh, you're right, you know. Either the vast majority, 99%, or maybe even 100% has to be allocated to. This group of shippers and not this group of shippers. Your honor, I don't think so. I understand where you're going because of. The commission already issuing a determination on predetermination of rolled in rates in this particular case. It's it's order from May 2024 that price tag is already kind of baked in the 390Million dollars. So the rate case is there, but you said you're not challenging the pipeline construction, the pipe, the price tags there, but. And the fact that it's going to be paid by existing customers, as opposed to people who wish to come in, maybe, but by existing customers, that's seems to already be baked in. But which existing customers will pay or which will pay the bulk. Of this expense, that's exactly what the section 4 proceeding is going to start out. Correct. Yes, and if the section 4 proceeding ended up saying that you, your clients ended up paying 1%. And newer shippers end up paying 99%. Does that not just solve your problem here? Yeah, I think my distinction would be the allocation of costs versus the total sum of 390Million dollars. And our argument is, is that the 390Million dollar price tag. There was other methods that could be used to be evaluated to get to that dollar figure out before we even get to the allocation. So, I'm bifurcating the 2 issues. I thought your argument in this case as well is that we shouldn't have to pay. Other people should have to pay. Correct. I didn't see an argument raised here that they got the math wrong. Understood, but in terms of the section 4 kind of allocation that you're kind of getting at, I just want to make the distinction that the section 4 case that's happening elsewhere. It's more or less regarding the allocation. We're again, you're right. We're arguing that we don't think we should have to pay the 390Million dollars for the shippers should not be that are currently on the pipeline. I'm in agreement and you're arguing that in that proceeding. We are, and if you win, I mean, obviously you hope to win. I would hope to win prevail. Yes. And everything's fine. I would agree. Nothing about this case. It doesn't matter what happened in this case. Can you also challenge under section 5? Possibly, your honor, the issue is, is that we already currently have an order on the books that says, we'll go to a section 4 proceeding and figure out how much you pay there and you can make your representations about we should pay 0. Or 1% or whatever, if you think there's some small part, that's fair for you to pay and you can do that there and you might win. And my understanding also is that proceedings on pause for settlement negotiations. That is correct, your honor, which if successful would also be at any need to decide. This case or any injury you assert from this case, right? And I think for our purpose, why should we decide this until we know what happens in the section 4 proceeding? We have an order currently enforceable that the first one says, look, we've made a judgment here that this should be paid by customers. That this enhances the pipeline capacity and service quality for all customers, so it'll be rolled in rates. But all said was, but who pays exactly how much we'll sort that out. Later, and I raise this because you're about to start about due process and I don't understand why this section 4 proceeding isn't part of the due process. You get here. Sure, your honor, and if the court would be inclined to go that direction, that's a fair ruling. I think from our perspective, whether we should or my misunderstanding things, I'm sort of 2 things. 1. should we wait? Especially if you're going to resolve it by settlement. And, but 2, I'm also asking, so that's 1, if you can answer, but the 2nd question is. Don't we have to factor in for purposes of your due process concerns. That you're getting still more set at the time. This is not the end of the story. There's going to be a section for proceeding and you can make all the showings you want in the world and that section for proceeding about you guys. Not. Your group, your client not having to pay much. So that's part of the due process to get. I understood your sent you a billion. No, 1 has sent us a bill. No. No, so can you answer my practical question? Should we wait and then can you tell that as you address your due process argument. How you have a due process concern, given that you're still in the middle of getting your process through the section for proceeding. Sure. Answering your initial question. 1st. You know, it's our position that you should rule on the issue now, rather than at the section for rate hearing. Only because we've gone through the proceeding and the term and has already made the determination via the SAP application way back. That was filed in 2023 had a final order that came out a year later. You know, that the pipeline has relied upon in terms of constructing. We are not. Challenging the construction of the pipeline addition, but we are challenging the, the allocation, or I should say that the price tag of this project and the feasibility of that 390Million dollar price tag. So, we're kind of, if we're waiting to the section for rate case, we're behind the 8 ball already. So, you're the process argument. Sure, regarding the due process argument, petitioners contend that the FERC and the pipeline have stonewalled petitions data requests and in fact, denied our due process. Your main argument on due process is the FERC. Um, acted unconstitutionally, or at least arbitrarily in. Granting this order before you had the CII information. Yes, but there's a, I mean, there's a certificate proceeding and. The applicant has to put in all the. Information supporting the application that for requires. And you intervened and had a chance to put in whatever information you want to require and your complaint is that. You didn't have access to agency information. In, you know, wholly apart from the record of the adjudication sounds like you're saying there's a constitutional entitlement to discovery. Doesn't seem hugely plausible to me. Sure. And. There's this loss of displacement gas, and that's actually happening. So we want to be able to compare the historical numbers to understand the progression flows and whether or not that this project, or the 390Million dollar cost of this project is none of it is in the record of this adjudication. Sure, but we have requested the information shortly after the SAP project. The application was filed and the request was not made on the docket such that would have known that right away. But then later on, you got the information that you asked for. The in first May 2024 letter response to us, granting us the CII information, they acknowledge that we requested it on in June 5th of 2023. So a year earlier, so, by the time we've got the information, which was, in fact, August of 2024, the SAP order approving the application for the pipeline addition that had already been approved. So, we have not had the opportunity to look at the information until after the fact. Is that form 567 information also in the exhibit G's essentially the data flow information? Yeah. So, there's a distinction to be made and let me rephrase my yes. The exhibit G contains a snapshot of 2 times of the gas flows once before construction and another after the construction of the SAP. This snapshot is insufficient to provide or to demonstrate historical patterns, or the progression of gas flows to determine the need for the project. And so, exhibit G was filed with the SAP application, but it was filed under seal of confidentiality. Our form 567, the CII information, that provides peak and average gas flows on an annual basis. And we first requested the 2022 form 567, which was delayed 14 months before we received it and then we subsequently requested the 2023 version as well, which that was provided almost instantaneously. So, to answer your question, the exhibit G is not the same as form 567. There are definitely differences. But FERC did ask for this annual flow data subsequent to the proceeding, but it at least is explained, like, they utilize this information that you're requesting. In your application in terms of approving the certificate? Yes. Whether FERC used it or not, it wasn't part of the record that we were able to see. I mean, that's part of our complaint. There's information out there that we haven't seen that we are entitled as intervenors to be able to assess. Even now, between the form 557 and the exhibit G's, you're saying there's additional information? No, the information now has been provided and it was provided after our deemed denial to our request for re-hearing. But is that information explained in FERC's letter of orders? No, to my knowledge, Your Honor, it's not, upon recollection. Okay, thank you. Your Honor, the petitioners are going to contend that the stalling of our data requests, which we have described, provided us an opportunity to make our case and that we, as the petitioners, fail to avail ourselves of the opportunity of that information and we were provided all the process that we were entitled. No, but FERC misses the point because this case turns on the principle that due process delayed is due process denied. And as mentioned, we didn't receive the information until months after the SAP certificate was already approved by FERC. In this case, the record demonstrates that the opportunity in which FERC- You don't care about this. You told us you don't care about the SAP certificate being approved. You just care about who pays for it. Well, the SAP certificate had two elements. One, to construct the addition of the pipeline system, but it also had the predetermination that the pipeline could recover from its shippers the entire $390 million price tag of the project. We care about the price tag. Okay, so you don't care about the price tag. You care about the allocation. Both, yes. Well, nowhere in your brief do you challenge the price tag. I see no arguments about they spent too much money. Sure. Okay. I mean, I just I keep getting confused when you talk about challenging the price tag. You're challenging the allocation. Yeah, I suppose I'm baking the two of them into one, but I understand your point. And so you got the information. Well, first of all, when you asked FERC for the information, when you filed a request with FERC, did you tell that office that there was urgency? We made the initial request in June of 2023. So shortly after. So, there was ongoing proceeding you needed it for? We went through the appropriate channels. I don't believe we requested it being urgent. Okay. All right. And you make a lot about the delay, but my understanding is that you had to get a FERC head to just go through a security clearance process to release this information because it's protected information. And so it's not like you just file and they hand it over to you. They had to make a security clearance determination. All right, so it's not something that's going to happen super fast. I agree with your honor. Okay. So, so are you saying that the amount of time it took for FERC to produce the document was inordinate? I would agree with that. Yes, it was inordinate. No, I'm sorry. It was excessive in the usual course. It was different from the usual course. How long does it usually take to get this clearance and document? I don't know, but I could provide you 2 examples. We requested in this case, it took 14 months and then requested the 2023 CI information and it took a matter of days. But had you already gotten the security clearance by then? That is correct. Well, that makes a big difference. It does. All right. Your honor, regarding the due process and just summing up before shifting over to arbitrary and capricious, it's our contention that by not having this information, we lack the ability to meaningfully and timely participate in the SAP application proceedings and by not having that information that you didn't say. I'm sorry. What would you, you've had months, years now to look at this document. What would you have said at that hearing and make it in the record that you didn't say? Now that you've looked at the document, you've been plenty of time to look at it. What would you have said that you didn't get to say? Your honor, I would argue 1st before answering your question that we were, it's a bit of a red herring in terms of we didn't get the information timely. But if we did have the information, we've been able to test the loss of displacement gas. You have plenty of time to do that, right? After the deemed denial, and after we've asked you to tell me what you would have said that you wouldn't have said that you didn't have the opportunity to say. Sure, we would have tested the ability of the pipeline to have the appropriate capacity, whether it was and you tested it. And what would that test have shown? You've had plenty of time to do that test. Yeah, I don't I don't know what the test would have shown. I mean, due process has a prejudice requirement. Yeah, and I would argue that are what is your prejudice? Well, the prejudice was ultimately the price tag and the allocation is what we would argue. But you have to show is how the absence of this particular document prejudice you in that. It contained information you would have provided material information you would have provided had you had it in time. And all I hear from you is we would have done an analysis. Correct yes, the, the 4, 5, 67 information is not a red. It's it's not a smoking gun document. It's more information that we're able to test to determine whether or not that the displacement from the gas displacement was as the pipeline was alleged. Did you test? We did not test why not. I, I don't have an answer on why we did not test. Questions. All right, we'll give you a couple more minutes on rebuttal. Thank you. Silence. Good afternoon may place the court and Scott editor for the Federal Energy Regulatory Commission judge. I think I want to go to question. You were just asking about whether the work has been done and I want to refer specifically to pages, 21 to 22 of the reply brief. But there's a long block quotation of, I think, a lot of the promises that we just heard more of and what I just want to point out here is that when the person was typing up those words in September of 2024, figuratively form 567 was right next to the keyboard they had it and they could have made the assertions there, which leads into the primary point that we raise in response to the petition is that. This commission, this agency takes the rehearing process seriously and when the issue came to the commission's attention that hadn't been. Disseminated quickly, the commission acted and that's the May 29th 2024 letter that letter comes. A little over a month after the rehearing request, and I might add before any paper was filed with this court, the commission issued that letter in order to. Accommodate the desire of the shipper petitioners here to make the argument. As as the commission pointed out in the rehearing order. Nothing happened after the May letter and so the commission issued a series of letters subsequently, giving the opportunity for the shippers to make the case that form 567 somehow detracted from the predetermination determination that was made in the certificate order. By their own admission, that never occurred. This case shouldn't be here today. We should have been able to resolve this issue before the agency without taking more time today of the course time and that's the way that's what we believe the natural gas act provides section 19 as interpreted by Allegheny. Um, at, um, um. Pages to have in front of me, but Allegheny clearly recognize that 1 of the arguments we responded to and Allegheny was that well, these are complicated cases. We need more time. And the response was, well, you have more time on the deemed denial date that that occurred the commission goes forward until you file the record. Precisely your honor and that's that's what the, and that's what the commission did here. I, I, I think. This was provided the natural gas act and those opportunities to work provided and. I also want to point out it's it's interesting about the exhibit G. That was on file from day 1, so that's on the record and I just want to make some, maybe talk a little bit about what the differences between exhibit G and the 587 and the commission talked about that at paragraph 5 note. 11. this is a 417 and form 567 is a more system wide information whereas exhibit G, which is required by commission regulation. This is 18 CFR 1, 5714 a 8 and I think we appended that to our brief. It's very detailed information and that and you can understand why it would be helpful to the commission to have that information because it requires the pipeline to show us what this, what the project or what the system looks like before the application and what it looks like after that allows the commission to make the determination on whether the project is needed. Form 567 does something different. It's it's an annual update of the system and it allows that all companies have to make the filing. It allows the commission to stay on top of what the sort of big picture of the natural gas industry looks like and again, 587 not required by commissioned regulations to be put on the record and what I just want to get back to the exhibit G. The shippers never asked for it until well, after the rehearing deadline, so they were flying blind through this process. This is the information required by commission regulation to be put on the record and then shippers never asked for it until well, after the rehearing request and they did so by a process under G4 of the of the commission's regulations. That govern data in our brief, we talked about the differences between G4 and G5 and and the exhibit G was released. It's unfortunate that Jesus used twice here, but I'm sorry for that confusion, but that pipeline released the exhibit G information under under G4 of 38813 and that was all on the record. And if counterfactually had pipeline for some reason, refused to do that, they would have thought that that wasn't appropriate. They would have made it. They would have had made a filing before the commission and then the commission would have had to rule on it. And and then that, of course, would become an issue that that could be subject to judicial review by contrast, this, this form is not on the record. It has never been on the record and it's not on the record to this day. And I think I think what we just heard is is the, my, my friends for the shippers don't even know for sure that it supports their position and we have no way of testing that because, as I said, it's not on the record, they requested it through G5 of the of the regulations, which, which was appropriate and they went through the process of. Asking to the coordinator to get that information and eventually it was released as the commission points out in the re, hearing order that release occurs after the after the certificate order. And and that's why the commission provided the process. Can I ask you about the status of the section for right? Pursuing 1. Assuming that they decide today to finally. Decide what they want to do with this information. But they use that to argue about allocation in the section forward proceeding. If they think this document they finally got helps them with that argument. As to whether they should have to pay much, if anything. That is, it isn't. I'm sorry. I'm just trying to finish. I think you already got the idea, but they just can't, they argue about how much they should pay if anything in the section for proceeding. It is an ongoing proceeding. I think if I can answer it this way, the presumption, the predetermination has been made in this case, in this certificate order, and we're asking the court to affirm that and the and that is a sort of high level determination that existing shippers are responsible for this project because it helps them reliability, flexibility now, within that the equitable. Allocation of those costs among existing shippers. That could be a live issue. I don't want to get too far and I don't know what's going on exactly in section for what the issue in the section for case and what the issues are. But those are potential issues that could come up. But what's happened here is again a very top level determination presumption. To be applied in the next case, and I think we cited the Texas Eastern case is a presumption that every shipper will pay something, but we, the section for proceeding will decide who pays how much. I think that's that sounds accurate. It's it's more granular, more detailed and it's, it'll, it'll be part of the tariff. You said, I'm sorry. That's sort of an equitable analysis. Yes. Was there any reason that you denied the re, hearing request 1st. And then gave the data, I do believe. So I think it took the commission some time to decide what was appropriate. I think that it was an, it was an evolving. Evolving process, so the. And I think it became apparent from from the, from the re, hearing requests, what was what was necessary is that the, is that the commission believed that that information needed to be released and the commission I think the only way to read this re, hearing or the re, hearing order is to realize that the commission believed that the group needed an opportunity to comment to receive the information and to comment on it. And to get that argument before the commission, and there's a lot of arguments that they've made about how the commission wouldn't this was some kind of trap and the commission wasn't going to really take that seriously. But I think the existence of the letters themselves, why that argument? And in addition, have the commission. They really followed through had they really taken the information and make made real substantive arguments like that promise they can and then the commission had had rejected it. We'd have be having a different conversation today and I'd be standing here trying to defend that. And by their, by their argument, or their assumptions of their argument, I'd have a hard time with those arguments. I'd have a hard time today. And so I think the better reading is that the 567 is not relevant, not helpful. And, and that's, that's why it hasn't been ever put on record. Thank you very much. Thank you. That's a look at the intervener now. Your honors and may please the court Joshua Johnson for respondent intervener East Tennessee natural gas. I think that the groups argument today has significantly narrowed the issues before the court. If I'm understanding the group correctly, their position seems to be that they are not challenging a project that benefits existing shippers. They just don't want those existing shippers as a whole to have to pay for the project, but that's not how the natural gas act works under the natural gas act. Natural gas companies can recover their costs in a reasonable rate of return through the rates that they charge for this particular project. There's no dispute. I'm not sure at this point. If they're going to be an allocation proceeding, and if they end up getting happy, they are that they really care of some other shippers have to pick up a big tab. But in this proceeding, and I agree that there's a separate question about allocation in the section for in this case. Or do not decide that in this case correct correct. That's absolutely right. Sure. Well, roll in this isn't some outside customer who wants to come in and should pay for this thing to connect to their. Plant, wherever it is, this is something that just sort of the pen if it's a whole pipeline for everybody who's already on it, but you all go figure out later in a section for proceeding who pays how much and I have no dispute with anything that you just said judge. But the group in this proceeding is still challenging the role in predetermination. They're, they're asking the court to vacate that. So, they're asking the court to undermine the basic decision that the existing shippers as opposed to, I suppose, the pipeline should pay for the costs of this project. And the court, I think, can easily reject that argument and say that any issues about cost allocation should be left to the section for proceeding. That's actually what said in its certificate order. But in terms of there, I've also been more. Do you have any update on the on the status of the section for proceeding section for proceedings are very lengthy proceeding. So, I still think that in terms of the life of the proceeding, we're still pretty early and in terms of the parties, defining what arguments are going to be presented. I would say that I think that the court should issue a decision here that there is a ripe dispute about the basic fundamental question of whether the role in predetermination should stand. And what that clarifies is that existing shippers as a whole will cover the costs of the project through new rates and in a rate proceeding and the court, we believe should deny the petition for review. Allow that role in predetermination to stand and then any questions about allocation or attribution can be left to the section for proceeding. If there are no further questions, thank you. Thank you. Council. I'll give you 2 minutes for a rebuttal on Mr. regular. Thank you, your honor just very quickly following up on the line of statements by the interview pipeline. Talking about the road and predetermination 1 of our problems, and this goes just very quickly to our arbitrary and capricious argument is that. The FERC elevated 1 factor of its policy statement, and that's treating the absence of new capacity as automatically justifying the rolled in rates and it disregarded other factors in the policy statement, specifically policy statement at pages 19 to 22, which we also said in our brief regarding abandoning balancing disregarding prudence and cost causation principles. And to be frank, FERC didn't weigh the purported reliability benefits. Against rate impacts and compare the appropriate costs. So, as it pertains, and I understand I've got just a very a minute or 2. I just wanted to flag that again for our arbitrary and capricious that the policy statement and how it is applied for the predetermination. Is part of our contention as well, which will not be resolved at the rate at the section for rate hearing as my friends on the other side of mentioned determination is you got to forfeit your problem on your policy statement argument. Yes, and then just very quickly tie in a loop regarding us receiving the data. We received the data on August 16, 2024. we were given 2 weeks to respond. I'm sorry, I'm sorry 2 weeks later on August 28th, we were told to respond to the data request 2 days after that for granted the certificate to construct. So, as we're kind of looking at the information, the amount of meaningful and timely participation by FERC's own actions, challenging the pipeline and its construction. So that nothing about construction effects. Okay. So I'm not sure why that matters. Understood your honor. That's all I have. Thank you. Your honor. And we would request that the court remand the predetermination of rates. Thank you. Thank you. The case is submitted. Thank you to both counsel.
judges: Millett; Katsas; Childs